**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Michael C. Delaney, Esq.
225 Liberty Street, 36th Floor
New York, New York 10281
(212) 483-9490
*Attorneys for Plaintiff,*
*The Guarantee Company of North America USA*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE GUARANTEE COMPANY OF NORTH AMERICA USA,<br><br>Plaintiff,<br><br>vs.<br><br>STEED GENERAL CONTRACTORS, INC., DELPHI PAINTING & DECORATING CO., INC., EDITH PAPASTEFANOU, CHRISPTOPHER PAPASTEFANOU, TERESA PAPASTEFANOU, JOHN KASELIS AND IRENE KASELIS,<br><br>Defendants. | Docket No.:<br><br><br><br><br><br><br>**COMPLAINT** |

Plaintiff, The Guarantee Company of North America USA, by and through its attorneys, McElroy, Deutsch, Mulvaney & Carpenter, LLP, by way of Complaint against Defendants, Steed General Contractors, Inc., Delphi Painting & Decorating Co., Inc., Stefanos Papastefanou, Edith Papastefanou, Christopher Papastefanou, Teresa Papastefanou, Skevos Papastefanou, John Kaselis and Irene Kaselis, alleges and says:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties are citizens of different states.

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because a substantial portion of the events giving rise to the claim occurred in the Southern District of New York. In addition, in the contract between the parties, the Defendants agreed to be subject to the jurisdiction of this District as this venue is the location where the "loss" as defined in the contract between the parties occurred.

## THE PARTIES

3.      At all relevant times hereinafter mentioned, The Guarantee Company of North America USA ("GCNA") was and is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business at One Towne Square, Suite 1470, Southfield, Michigan 48076.

4.      Upon information and belief, Steed General Contractors, Inc. ("Steed") was and is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 1445 Commerce Avenue, Bronx, NY 10461.

5.      Upon information and belief, Delphi Painting & Decorating Co., Inc. was and is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 1445 Commerce Avenue, Bronx, NY 10461.

6.      Upon information and belief, Edith Papastefanou is an individual residing at 112 Leeward Is., Clearwater, Florida 33767.

7.     Upon information and belief, Christopher Papastefanou is an individual residing at 30 Sherman Ave., Waldwick, New Jersey 07463.

8.     Upon information and belief, Teresa Papastefanou is an individual residing at 30 Sherman Ave., Waldwick, New Jersey 07463.

9.     Upon information and belief, John Kaselis is an individual residing at 32 Pennington Avenue, Waldwick, NJ 07463.

10.    Upon information and belief, Irene Kaselis is an individual residing at 32 Pennington Avenue, Waldwick, NJ 07463.

## GENERAL ALLEGATIONS

**I.     THE INDEMNITY AGREEMENT**

11.    Steed was at all relevant times engaged in the construction contracting business in connection with public and/or private construction projects.

12.    In connection with certain of its construction contracts, Steed was required to provide surety bonds.

13.    On June 8, 2007, in consideration for and in order to induce GCNA, as surety, to issue bonds on behalf of Steed, as principal, Steed, Delphi Painting & Decorating Co., Inc., Stefanos Papastefanou, Edith Papastefanou, Christopher Papastefanou, Teresa Papastefanou, Skevos Papastefanou, John Kaselis and Irene Kaselis (collectively, the "Indemnitors") executed a General Agreement of Indemnity in favor of GCNA, as indemnitee (the "Indemnity Agreement").

14.    A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit A**.

15.    Pursuant to Paragraph 4 of the Indemnity Agreement, the Indemnitors agreed, jointly and severally, that:

> The [Indemnitors] shall indemnify [GCNA] and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature (including premiums and fees due for the issuance and continuance of any BOND or BONDS) which [GCNA] may sustain, incur or become liable for by reason of having executed or procured the execution of any BOND or BONDS, or by making any investigation of any matter concerning any BOND or BONDS, or by prosecuting or defending any action in connection with any BOND or BONDS, or by recovering any salvage or enforcing this Agreement.   In the event [GCNA] advances funds for the benefit of any CONTRACTOR in connection with work or subject to a BOND or BONDS (hereinafter sometimes referred to as BONDED CONTRACT) and/or for the discharge of obligations incurred in connection with a BONDED CONTRACT, such advances shall be deemed "losses" under the terms of this Agreement whether or not such advances have been so used by the CONTRACTOR.

16.    Pursuant to Paragraph 5 of the Indemnity Agreement, the Indemnitors further agreed, jointly and severally, that:

> Upon [GCNA's] reasonable belief that it may incur a loss on a BOND or BONDS, [GCNA] may demand and, upon [GCNA's] demand, the [Indemnitors] shall deliver over to [GCNA] collateral security acceptable to [GCNA] to cover any contingent losses and any subsequent increase thereof.

17.    In Paragraph 7 of the Indemnity Agreement, the Indemnitors agreed, jointly and severally, that:

> [GCNA] may settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it, and any such settlement or compromise shall be binding upon the [Indemnitors]. Vouchers or other evidence of payments made by [GCNA] shall be prima facie evidence of the fact and amount of the liability of the [Indemnitors] to [GCNA].

## II.    THE CONTRACT, THE BOND AND GCNA'S EXPOSURE

4

18.     Subsequent to the execution of the Indemnity Agreement, in or about May 2008, Steed entered into a contract with the New York State Department of Transportation ("NYSDOT") to perform certain painting work in connection with a project known as "Painting Eight Bridges Over Interstate 84 at Various Locations" (the "Project").

19.     On or about May 5, 2008, GCNA, as surety, issued a performance bond (the "Performance Bond") and a payment bond (the "Payment Bond"), each bearing bond no. LS10042915, and each in the penal sum of $2,179,781.86, on behalf of Steed, as principal, and in favor of the NYSDOT, as obligee, in connection with the Project.  A true and accurate copy of the Bond is attached hereto as **Exhibit B**.

20.     On or around July 27, 2020, the New York State Commissioner of Labor submitted a claim against the Payment Bond seeking payment in the amount of $537,952.55 arising from Steed's alleged prevailing wage violations in connection with the Project (the "Claim").

21.     Thereafter, on or about December 4, 2020, the New York State Commissioner of Labor filed a complaint in New York Supreme Court, Orange County captioned, Roberta Reardon, Commissioner of Labor of the State of New York v. Guarantee Company of North America, Index No. EF007269-2020, seeking damages in the amount of $563,615.03.

22.     As a result of having executed the Bond, GCNA has incurred and will continue to incur costs, expenses, professional and consulting fees and attorneys' fees, and is exposed to damages, losses, costs, professional and consulting fees, attorneys' fees, disbursements, interest and expenses of every kind and nature.

III.     THE COLLATERAL DEMAND

23.    Pursuant to Paragraph 5 of the Indemnity Agreement, by letter dated October 22, 2020, GCNA demanded that the Indemnitors deposit collateral security in the amount of Five Hundred Forty Thousand Dollars and 00/100 ($540,000.00). The Indemnitors failed to respond to the collateral demand in breach of their joint and several obligations under the Indemnity Agreement.

**FIRST COUNT AGAINST ALL DEFENDANTS**
(Specific Performance of the Indemnity Agreement
To Enforce GCNA's Demand for Collateral Security)

24.    GCNA repeats each and every allegation set forth in the preceding paragraphs of its Complaint as if set forth at length herein.

25.    Under the terms of the Indemnity Agreement, the Indemnitors agreed, among other things, to deposit with GCNA an amount of money equal to any reserve set by GCNA or an amount that GCNA, in its sole judgment, deems sufficient to protect from loss in connection with the Bond and to convey collateral as security for the full performance of the Indemnity Agreement.

26.    GCNA has demanded collateral from the Indemnitors in the amount of $540,000.00 in connection with the Claim against the Bond.

27.    Despite demand, the Indemnitors have repeatedly failed and refused to deposit collateral with GCNA as security for the full performance of the Indemnity Agreement.

28.    By reason of the foregoing breach of the Indemnity Agreement, GCNA has suffered, and will continue to suffer, injury and damage.

**WHEREFORE**, GCNA demands judgment against all Indemnitors, jointly and severally, for specific performance as follows:

(a)     ordering and directing the Indemnitors, and each of them, and their officers, agents, employees, attorneys and other persons acting on their behalf, immediately to deposit collateral in the amount $540,000;

(b)     requiring the Indemnitors to render to GCNA a full and complete accounting of all assets owned by them or anyone or any of them in which they or any one of them may have an interest;

(c)     requiring the Indemnitors to allow GCNA full and complete access to all financial books, records, documents and accounts maintained by them or any one of them in which they may have an interest;

(d)     for damages in an amount equal to any and all liability, loss, cost, expense, and attorneys' fees incurred or to be incurred by GCNA as a result of its having executed the Bond, together with the appropriate interest thereon; and

(e)     for reasonable attorneys' fees, costs of suit, interest, and any other relief that the Court deems just and proper.

## SECOND COUNT AGAINST ALL DEFENDANTS
### (Contractual Indemnification)

29.     GCNA repeats each and every allegation set forth in the preceding paragraphs of its Complaint as if set forth at length herein.

30.     Pursuant to Paragraph 4 of the Indemnity Agreement, the Indemnitors agreed, jointly and severally, that:

> The [Indemnitors] shall indemnify [GCNA] and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature (including premiums and fees due for the issuance and continuance of any BOND or BONDS) which [GCNA] may sustain, incur or become liable for by reason of having executed or procured the execution of any BOND or

7

BONDS, or by making any investigation of any matter concerning any BOND or BONDS, or by prosecuting or defending any action in connection with any BOND or BONDS, or by recovering any salvage or enforcing this Agreement.  In the event [GCNA] advances funds for the benefit of any CONTRACTOR in connection with work or subject to a BOND or BONDS (hereinafter sometimes referred to as BONDED CONTRACT) and/or for the discharge of obligations incurred in connection with a BONDED CONTRACT, such advances shall be deemed "losses" under the terms of this Agreement whether or not such advances have been so used by the CONTRACTOR.

31.    The Indemnitors have failed to honor their obligations under the Indemnity Agreement and have otherwise breached the Indemnity Agreement.

32.    As a direct result of the Indemnitors' breach of the Indemnity Agreement, GCNA has sustained damages, costs and expenses, and will continue to sustain damages, costs and expenses.

33.    Based on the foregoing, the Indemnitors are liable to GCNA for the damages, costs, expenses, professional and consulting fees and attorneys' fees that GCNA has sustained to date, and for any and all liability, losses, costs, expenses, professional and consulting fees and attorneys' fees that may be incurred by GCNA in the future.

**WHEREFORE**, GCNA respectfully demands that judgment be entered against the Defendants, jointly and severally:

(a) for contractual indemnification for the costs, expenses, professional and consulting fees and attorneys' fees incurred by GCNA, and any and all liability, loss, cost, expense, professional and consulting fees and attorneys' fees to be incurred by GCNA, together with appropriate interest thereon;

(b) for declaratory relief declaring the Defendants liable to GCNA for all loss, liability, cost or expense to which GCNA may be exposed or which it may sustain;

(c) for an Order compelling each Defendant to perform their obligations to GCNA under the Indemnity Agreement and the Bond;

(d) for attorneys' fees and costs of suit; and

(e) for such other and further relief, legal or otherwise that this Court may deem just and proper.

## THIRD COUNT AGAINST STEED
### (Exoneration)

34.    GCNA repeats each and every allegation set forth in the preceding paragraphs of its Complaint as if set forth at length herein.

35.    As between GCNA and Steed, GCNA is secondarily obligated under the Bond, while Steed is primarily obligated under the Bond, and otherwise owes a duty to GCNA to procure the discharge of all obligations arising under the Bond.

36.    Steed has failed, and continues to fail, to satisfy its obligations to GCNA arising under the Bond.

37.    GCNA is entitled to be exonerated and indemnified by Steed for any and all losses incurred or to be incurred under the Bond.

38.    As a result of Steed's failure to honor its obligations arising under the Bond, GCNA has sustained and will continue to sustain damages.

**WHEREFORE**, GCNA respectfully demands that judgment be entered against Steed:

(a) for an Order requiring Steed to exonerate GCNA for any and all damages in an amount equal to any and all liability, loss, cost, expense, professional and consulting fees and attorneys' fees incurred or to be incurred by GCNA, together with the appropriate interest thereon;

(b) for attorneys' fees and costs of suit; and

(c) for such other and further relief, legal or otherwise that this Court may deem  just and proper.

**FOURTH COUNT AGAINST STEED**
**(Subrogation)**

39.     GCNA repeats each and every allegation set forth in the preceding paragraphs of its Complaint as if set forth at length herein.

40.     As a result of having executed the Bond, GCNA may be obligated to make payments to satisfy and/or remedy Steed's default(s) on the Contract.

41.     To the extent that GCNA will make payments to extinguish Steed's debts and obligations arising from the Bond, GCNA has, and will, become subrogated to the rights of, among others, those whom it has paid, or will pay in connection with the Bond.

42.     As a result of Steed's failure to honor its obligations to GCNA arising under the Bond, GCNA has sustained damages, costs and expenses, and will continue to sustain damages, costs and expenses.

**WHEREFORE**, GCNA respectfully demands that judgment be entered against Steed:

(a) for subrogation in an amount equal to any payment made by GCNA on Steed's behalf in connection with any bond issued by GCNA; and

(b) for interest, costs of suit, attorneys' fees and such other and further relief as may be just and equitable.

**FIFTH COUNT AGAINST STEED**
**(Common Law Indemnification)**

43.     GCNA repeats each and every allegation set forth in the preceding paragraphs of its Complaint as if set forth at length herein.

44.     As between GCNA and Steed under the Bond, GCNA is secondarily obligated under the Bond, while Steed is primarily obligated under the Bond.

45.     Steed is required to pay and satisfy any and all claims made on the Bond and to place GCNA in possession of funds or property sufficient to satisfy all such claims before GCNA is required to make a payment thereon or otherwise fulfill its obligations under the Bond.

46.     Steed is liable to GCNA for the damages, costs, expenses, professional and consulting fees and attorneys' fees that GCNA has sustained to date, and for any and all liability, losses, costs, expenses, professional and consulting fees and attorneys' fees that GCNA may incur in the future.

**WHEREFORE**, GCNA respectfully demands that judgment be entered against Steed:

(a) ordering Steed to discharge any claims asserted against GCNA and to reimburse GCNA for any outlays which it may have had to make in connection therewith;

(b) ordering and directing Steed and its officers, agents, employees, attorneys and other persons acting on their behalf, to immediately deposit collateral with GCNA in an amount sufficient to indemnify GCNA from any and all liability, cost and expense incurred as a result of its having executed the Bond, together with appropriate interest thereon;

(c) requiring Steed to render to GCNA a full and complete accounting of all assets owned by it or anyone in which it may have an interest;

(d) awarding in favor of GCNA, and against Steed, damages in the amount of all expenditures and outlays made by GCNA, including attorneys' fees, professional and consultant's fees, litigation expenses, interest and court costs; and

(e)  awarding interest, costs of suit, attorneys' fees and such other and further relief as may be

just and equitable.


Dated:  April 14, 2021                    McELROY, DEUTSCH, MULVANEY &
                                          CARPENTER, LLP
                                          *Attorney for Plaintiff,*
                                          *The Guarantee Company of North America USA*


                                          By: _s/ Michael C. Delaney_____
                                              Michael C. Delaney
                                              225 Liberty Street, 36th Floor
                                              New York, New York 10281
                                              (212) 483-9490

12